AO 91 (Rev. 08/09) Criminal Complaint



# UNITED STATES DISTRICT COURT
for the
Eastern District of Michigan

| | |
|---|---|
| United States of America<br>v.<br>John Kennedy | ) <br> ) Case:2:11-mj-30307<br> ) Judge: Unassigned,<br> ) Filed: 06-07-2011 At 10:32 AM<br> ) USA V. JOHN KENNEDY (CMP)(MRM)<br> ) |
| *Defendant(s)* | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of **April 28 and 29, 2011** in the county of **Wayne** in the **Eastern** District of **Michigan**, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 26 Section 5861(d) | The possession of a destructive device (Title II Firearm) that was not registered to him in the National Firearms Registration and Transfer Record |

This criminal complaint is based on these facts:

Please see the attached affidavit

☑ Continued on the attached sheet.

_____
Complainant's signature

Ted Crews, Special Agent - ATF
Printed name and title

Sworn to before me and signed in my presence.

Date: 06/07/2011

_____
Judge's signature

City and state: Detroit, Michigan

MAGISTRATE JUDGE MARK A. RANDON
Printed name and title

# AFFIDAVIT

I, Ted A. Crews being duly sworn, depose and state the following:

1. I make this affidavit from personal knowledge based on my participation in this investigation, including interviews that I or other law enforcement officers have conducted, communications with others who have personal knowledge of the events and circumstances described herein, and information gained through my training and experience. The information outlined below is provided for the limited purpose of establishing probable cause and does not contain all the details or facts, known to me that relate to this investigation.

2. I have been employed as a Special Agent (SA) with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) for approximately eleven years. Prior to my employment with ATF, I was employed as a Criminal Investigator with the Bureau of Indian Affairs (BIA). During my time as a Federal Criminal Investigator, I have participated in numerous investigations that resulted in the execution of Federal search and arrest warrants.

3. Sometime after 10:00 AM on April 28, 2011, a telephonic bomb threat was received by an employee at Trenton High School, located at 2601 Charlton Road in Trenton, MI. During that threat, the UNKNOWN MALE CALLER told the employee that explosive devices had been placed inside the school and were set to detonate at a specific time. As a result of the threat the Trenton Police Department (TPD) was contacted and the students were evacuated from the building. A search of the school and surrounding areas was conducted and nothing of a suspicious nature was located.

4. Sometime around 4:00 PM, that same day, a teacher found a suspicious item on the ground in the teacher's parking lot. The item was contained in a clear plastic Zip-Loc type bag and appeared to be an improvised explosive device (destructive device). TPD and the Wayne County Airport Bomb Squad responded to the scene. After inspection by the bomb squad the item was confirmed to be an improvised explosive device (destructive device). The bomb squad utilized a PAN Disruptor to render the device safe.

5. Among the components of the device where: a plastic project box, an LG cell phone with battery, two bolts passing through the top of the box, alligator clips and wires.

6. On May 4, 2011, the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), TPD and the Michigan State Police (MSP) Bomb Squad, ATF and the Michigan State Police (MSP) Bomb Squad responded to a post blast scene at the ACO Hardware store located at 3080 Van Horn Road in Trenton, MI. According to witnesses an explosion occurred near their parking lot sometime during the evening hours of April 29, 2011, but was not reported to police. Investigation at that scene indicated that an improvised explosive device (destructive device) had likely been placed and subsequently detonated just off the paved portion of the parking lot.

7. The remains of the device included: a black plastic battery pack that appeared to contain two (2) AA size batteries. Affixed to the battery pack was a black piece of Velcro. Protruding from the battery pack were two (2) lengths of wire. At least one (1) of those wires appeared to be affixed, possibly by solder or other means, to a wrist watch (no band). Another wire appeared to come from the watch, also possibly affixed by solder or other means and was connected, by what appeared to be, black electrical tape to one (1) of the wires coming from the battery pack. The face on the watch showed the day of the month as "24" and the watch appeared to have stopped functioning with the small hand

on or near the "8" position and the large hand on or near the "58" position (7:58). A piece of Velcro was attached to the back of the watch.

8. A second battery pack was also recovered. This battery pack was also made of black colored plastic, but was larger in size than the battery pack referenced above. It also appeared to contain AA batteries. The battery pack had Velcro attached to it and a small on/off switch on one (1) side. Protruding from the battery pack were two (2) lengths of wire. At least a portion of one (1) of those lengths of wire appeared to be affixed to the wrist watch, possibly with solder or by other means. A wire protruded from the face of the watch and was connected with other wires to an unknown object. The date on the watch was "12" and the watch appeared to have stopped functioning with the small hand on or near the "3" position and the large hand on or near the "55" position (2:55). A piece of Velcro was affixed to the back of the watch.

9. The evidence from both the Trenton High School device and the ACO Hardware device were collected and sent to the ATF National Laboratory. Initial analyses on the components of both the Trenton High School device and the ACO Hardware device indicated that a hook and loop or Velcro type material was used in both. Also, JB Weld/JB Kwik, a two (2) part epoxy, had been used instead of solder to connect the various components of the Trenton device. A similar type epoxy mixture was used to connect the components of the ACO Hardware device.

10. Beginning on or about May 5, 2011, ATF Special Agent Ted Crews began serving a series of Grand Jury Subpoenas to obtain telephonic records that might be associated with the telephonic bomb threat received at Trenton High School on April 28, 2011. The records from the high school showed that on that day the school's main office line, (734) 692-4530, received approximately ten (10) calls between 10:00 AM and 11:47 AM.

    Investigators identified a couple calls that were of interest to them. Among those calls was one (1) that was received at 10:12:51 AM from telephone number (313) 409-0741. The call lasted approximately one (1) minute and ten (10) seconds.

11. Records from AT&T showed that telephone number (313) 409-0741 was a cellular telephone that was activated through TracFone Wireless on April 25, 2011. The toll records associated with that number showed that the first activity on the line occurred on April 25, 2011, at 3:59 PM. This activity appeared to be a series of text messages or other inputs from the phone's keypad that might indicate that the customer was in the process of activating the phone with the service provider. Similar activity occurred on the line until approximately 4:04 PM.

12. The first and only telephonic activity on the line occurs on April 28, 2011. The records show five (5) calls to (313) 692-4530 were placed between 10:10 AM and 10:11 AM. At 10:11 AM, one (1) call was placed to (734) 584-2187 and two (2) calls were placed to (313) 584-2187 (an unpublished land line). At 10:12 AM, a call was placed to (313) 563-2144 (an unpublished land line) and to (313) 692-4530. At 10:13 AM, a call was placed to (734) 692-4530, Trenton High School, that lasted one (1) minute and ten (10) seconds. It appears that several of the above listed calls, including the first five (5), may have been misdialed numbers in which the wrong area code was dialed. NOTE: According to AT&T, the only telephonic activity for this number occurred on April 28, 2011, with the last call being to Trenton High School.

13. On or about May 17, 2011, TracFone Wireless provided SA Crews with some initial information regarding the account for telephone number (313) 409-0741. According to TracFone, the account was activated on April 25, 2011. Their records indicated that the telephone, a Samsung Model T105G cellular telephone was purchased at register # 70 on

April 25, 2011, at or about 3:37 PM. The purchase occurred at TracFone retailer DQ600, otherwise identified as Walmart Store #3336, located at 23800 Allen Road in Woodhaven, Michigan.

14. On May 17, 2011, SA Crews made telephonic contact with Donna Holloman, Asset Protection Coordinator at Walmart Store #3336, located at 23800 Allen Road in Woodhaven, Michigan. He advised Ms. Holloman of his purpose for calling and asked that she preserve any records and surveillance footage in Walmart's possession that might document the sale of the Samsung cellular telephone on April 25, 2011.

15. On May 18, 2011, SA Crews met with Ms. Holloman at the Walmart store in Woodhaven, MI. During their meeting, SA Crews provided Ms. Holloman with a Grand Jury subpoena requesting the records and surveillance footage they had previously discussed. Ms. Holloman advised that she had identified the surveillance footage documenting the sale of the phone. She advised that the same UNKNOWN SUBJECT (UNSUB) who purchased the phone made a second purchase of cigarettes before leaving the store that day. Ms. Holloman provided SA Crews with copies of the receipts documenting those sales and a copy of the surveillance footage.

16. The receipts provided to SA Crews showed that at or about 3:38 PM on April 25, 2011, from register #70, the UNSUB purchased a Samsung T105 G TracFone for $9.88; a 60 minute TracFone card for $19.88; JB Weld for $4.57; a six (6) pack of Elmer's glue sticks for $1.97; a black colored plastic file folder for $5.47 and a 10 ½ X 15 inch Bubble Wrap mailing envelope for $1.22. The total cost of the transaction was $45.57 and the UNSUB paid in cash. The second receipt showed that the UNSUB purchased a pack of Marlboro King Box cigarettes for $7.69 at register # 17. The UNSUB paid for the cigarettes with cash.

17. The UNSUB seen in the Walmart surveillance footage is described as a white male, approximately 25 to 35 years of age. He is approximately 5'5" to 5'10" tall, with a medium to stocky build. He has short, dark colored hair. He appears to be wearing dark (black) cargo or BDU type pants with side pockets, a grey colored T-shirt with writing on the front and an OD green flight jacket. The jacket has the black name plate affixed to the left chest and an American flag patch on the upper left sleeve.

18. The UNSUB was seen in the surveillance footage arriving and departing from the Walmart parking lot in what appeared to be a light colored Chevrolet Trailblazer. Further investigation identified that vehicle as likely being a 2005 or 2006 Chevrolet Trailblazer.

19. On May 24, 2011, SA Crews received more information from TracFone Wireless relative to telephone number (313) 409-0741. Those records showed that the call to Trenton High School on April 28, 2011, originated in Rockwood, MI.

20. On May 27, 2011, SA Crews received records from the State of Michigan that listed all 2005 and 2006 Chevrolet Trailblazers registered in Wayne and Monroe Counties. For the next week SA Crews organized that list and obtained the driver's license photographs of the registered owners of many of those vehicles. Among the registered owners queried by SA Crews was an older adult male named Leonard Lamarne who resided at 26794 Hudson Lane in Flat Rock, MI. Mr. Lamarne was shown to be the registered owner of a 2005 Chevrolet Trailblazer, bearing Michigan license plate number BWT 1037.

21. On June 6, 2011, ATF released images of the UNKNOWN SUBJECT from the Walmart surveillance footage to local media. Those images appeared on the WDIV Channel 4 and WXYZ Channel 7, editions of the evening news.

22. During the late evening hours of June 6, 2011, a Source of Information (SOI) called the Trenton Police Department (TPD) and provided information regarding the UNKNOWN

SUBJECT he/she saw on the news. TPD contacted SA Crews and provided contact information for the SOI.

23. SA Crews made telephonic contact with the SOI. The SOI advised SA Crews that they saw the images of the UNKNOWN SUBJECT on the news and they immediately identified the person as their relative, JOHN KENNEDY. The SOI described KENNEDY as being in his 40's, approximately 5'10" tall and weighing between 160 and 180 pounds. According to the SOI, KENNEDY suffered a previous explosive related injury that left one of his hands and arms scarred, but functional. The SOI said that KENNEDY had served in the United States Air Force (USAF). The SOI believed that KENNEDY had also served time in prison in the State of Indiana for explosives or weapons related offenses.

24. KENNEDY had been living with his sister near Lagrange, Indiana, but several months ago came to Michigan to stay with his step-father and mother who was ill. The SOI explained that KENNEDY's mother was named Debbie and his step-father was named Leonard Lamarne. The SOI said that KENNEDY's mother had recently passed away and KENNEDY remained living with his step-father at Lamarne's residence located in a trailer park at 26794 Hudson Lane in Flat Rock, MI. The SOI said that KENNEDY may own a small grey colored car, but had been driving his mother and step-father's vehicle since he'd been in Michigan. According to the SOI, that vehicle was a Chevrolet Trailblazer, which was equipped with a "handicap sticker" belonging to KENNEDY's mother.

25. The SOI was at the residence located at 26794 Hudson Lane with KENNEDY several weeks ago. The residence is described as a double wide trailer that has a deck on the front that wraps around the trailer. KENNEDY has a bedroom inside the residence.

The SOI said that during their visit with KENNEDY, KENNEDY showed the SOI a white colored powder that he described as being an explosive. KENNEDY went on to show the SOI some "blasting caps" and a one (1) inch by one (1) inch black colored box with a switch on it. KENNEDY told the SOI that he was familiar with various types of cellular phones and knew how to use a cellular telephone to detonate an explosive device. The SOI said that KENNEDY also showed him a handgun that belonged to him.

26. On June 6, 2011, SA Crews drove to 26794 Hudson Lane in Flat Rock, MI. Parked in the driveway was a Chevrolet Trailblazer similar to the vehicle seen in the Walmart surveillance footage. Also parked in the driveway was a Chevrolet Impala bearing Indiana license plate number TR4819. According to TPD, that vehicle is registered to a Kristy L. Watkins from Lagrange, Indiana.

27. On June 6, 2011, TPD conducted several computerized searches for information regarding John KENNEDY. According to the records they found, John Robert KENNEDY, DOB: XX/XX/1969 of Lagrange, Indiana, has a criminal history in the State of Michigan under FBI#: 300968NA1. That record originated in 1991 from the Oxford Police Department and included five (5) felony convictions. The convictions included three (3) for weapons/miscellaneous offenses and two (2) for possession of a Molotov cocktail/other explosives.

28. Under Federal law, Improvised Explosive Devices, like the one that detonated at the ACO Hardware Store on or about April 29, 2011, are defined as destructive devices, which are Title II firearms under Title 26 United States Code, Chapter 53, Section 5845. Under Title 26 United States Code, section 5861, a person possessing or manufacturing a Title II firearm must have that firearm registered to him in the National Firearms

Registration and Transfer Record. It is a violation of Federal law not to have such a firearm properly registered.

29. On June 7, 2011, a search of the National Firearms Registration and Transfer Record was conducted and no records were found to indicate that John KENNEDY had any Title II firearms registered to him.

30. Based on the aforementioned facts, including the purchases made by John KENNEDY at the Walmart store in Woodhaven, MI on April 25, 2011 I believe that probable cause exists to issue a warrant for the arrest of John KENNEDY, charging him with the unlawful possession of a Title II firearm, in violation of Title 26 United States Code, Section 5861(d).

_____
Ted A. Crews
ATF Special Agent

Subscribed and sworn before me this  7th  day of  June , 2011.

_____
MARK A. RANDON
United Sates Magistrate Judge